```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

MARC KILLAM,

        Plaintiff,

v.                          Case No.: 8:16-cv-2915-T-33TBM

AIR AND LIQUID SYSTEMS, INC.,
ET AL.,

        Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Plaintiff Marc Killam's Motion to Remand (Doc. # 103), filed on November 14, 2016. On November 30, 2016, Defendant Crane Co. filed a Response to the motion. (Doc. # 143). For the reasons that follow, the Motion to Remand is denied.

**I.  Procedural History**

Killam served in the U.S. Navy from 1973 to 1977, aboard the USS McCandless while at sea and in the Philadelphia Navy Yard. (Doc. # 2 at ¶ 3). He alleges that, as a Boiler Tender, he "removed and replaced asbestos gaskets, block, refractory, castable, pipe covering, insulating cement, packing and/or spray from valves, boilers, pumps, and/or other miscellaneous machinery, and/or worked near others who did." (Id.). In the performance of his duties, he "cut, scraped, chipped, mixed, pulled and/or sawed these items," and during each job he

"regularly inhaled" asbestos dust. (Id.). He also "ingested or otherwise absorbed large amounts of asbestos fibers." (Id. at ¶ 4).

Killam alleges that Air and Liquid Systems, Inc., Aurora Pump Company, Carrier Corp., CBS Corporation, Crane Co., Cochrane Corporation, Dravo Corporation, Electrolux Home Products, Inc., Flowserve US, Inc., Foster Wheeler Energy Corporation, General Electric Company, G.G. of Florida, Inc., Gould Pumps, Inc., IMO Industries, Inc., Ingersoll-Rand Company, ITT Corporation, John Crane, Inc., Johnson Controls, Inc., Metropolitan Life Insurance Co., Strahman Valves, Inc., Velan Valve Corp., and Warren Pumps, L.L.C. "manufactured, sold, distributed, installed or promoted" the asbestos products that he came into contact with. (Id.). He also alleges that from 1978, to 1980, he was an auto mechanic and "breathed asbestos dust emanating from products for which Defendants Honeywell International, Inc. and Flowserve USA, Inc. have responsibility." (Id. at ¶ 5).

In December of 2015, Killam learned that he has "Asbestosis, and at a subsequent time, learned said disease was wrongfully caused." (Id. at ¶ 55). On September 26, 2016, Killam filed a Complaint against the above-captioned Defendants in the Thirteenth Judicial Circuit in and for

2

Hillsborough County, Florida. (Doc. # 2). Killam's Complaint contains the following counts, each asserted against all Defendants: (1) negligence, (2) strict liability, (3) "Conspiracy Against All Defendants in Collusion with Metropolitan Life Insurance Company," and (4) fraudulent inducement. (Id.). Crane Co. removed the case to this Court on October 13, 2016, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. (Id.). At this juncture, Killam seeks an Order of remand.

## II. Federal Officer Jurisdiction Analysis

A federal court has jurisdiction under 28 U.S.C. § 1442(a)(1) to hear an action against any person acting under the direction of the United States or its agencies, so long as all statutory requirements are satisfied. Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1427 (11th Cir. 1996). "Removal under 28 U.S.C. § 1442(a)(1) is an exception to the well-pleaded complaint rule, and a case can be properly removed even where the federal question does not appear on the face of a plaintiff's complaint." Batchelor v. Am. Optical Corp., No. 1:16-cv-21235, 2016 U.S. Dist. LEXIS 65220, at *6 (S.D. Fla. May 9, 2016)(citing Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999)("Under the federal officer removal statute, suits against federal officers may be removed despite the

3

nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.").

"The right of removal is made absolute whenever a suit in a state court is for any act under color of federal office, regardless of whether the suit could originally have been brought in a federal court." Magnin, 91 F.3d at 1427. "[D]efendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute." Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014).

Removal by a private party defendant is appropriate under the federal officer removal statute when the removing defendant shows: (1) the defendant is a person acting under the statute; (2) the defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal nexus between the plaintiff's claims and the defendant's actions under federal direction; and (4) the defendant has raised a colorable defense based on federal law. See Mesa v. Ca., 489 U.S. 121, 124-45 (1989); Ruppel v. CBS Corp., 701 F.3d 1176, 1180-81 (7th Cir. 2012). As discussed below, the Court finds that all elements are satisfied.

1. **Crane Co. is a "Person"**

Killam does not dispute that the first element is satisfied and, because a "person" includes a corporation, such as Crane Co., the Court finds that the first element is met. See Winters v. Diamond Shamrock Co., 149 F.3d 387, 398 (5th Cir. 1998)("[C]orporate entities qualify as 'persons' under § 1442(a)(1)."); Leite, 749 F.3d at 1122 ("Crane, a private contractor producing equipment for the Navy, qualifies as a 'person' under § 1442(a)(1).").

**2.   Crane Co. Acted at the Direction of the U.S. Navy**

The Court also finds that Crane Co. has met the second element – that it was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct alleged in the Complaint. As stated in the Notice of Removal, Crane Co.'s products were designed and manufactured pursuant to precise terms and specifications approved by the Navy. (Doc. # 1 at ¶ 8).

Crane Co. has filed the affidavit of Anthony D. Pantaleoni, the Vice-President of Environmental, Health and Safety for Crane Co. (Doc. # 1 at 84-85). Among other sworn statements, Pantaleoni indicates:

> Crane Co. made and supplied equipment, including valves, for Navy ships under contracts between Crane Co. and the shipyards and/or the United States of America, specifically the Navy Department. The manufacture of equipment for use

5

> on Navy vessels was governed by an extensive set of federal standards and specifications, chiefly military specifications known as Navy Specifications and later "MilSpecs." The MilSpecs governed all aspects of a piece of equipment, such as a valve's design and construction and specified the materials to be used, including materials such as gaskets and packing used in equipment. . . . All equipment supplied by Crane Co. to the Navy was built in accordance with the Navy specifications.

(Id. at 85).

In addition, the affidavit of Rear Admiral David P. Sargent, Jr., a retired Navy Rear Admiral, contains a detailed discussion regarding the manner in which the Navy controlled every aspect of building warships, including all parts and supplies of such ships. (Id. at 156-191). These authorities establish that Crane Co. was acting under the direction of a federal officer with respect to asbestos-related actions. See also Ruppel, 701 F.3d at 1181 (reversing district court's order granting motion to remand in federal officer removal case because "CBS worked hand-in-hand with the government, assisting the federal government in building warships. 'Acting under' covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete.").

### 3. The Causal Nexus Element is Satisfied

Killam disputes whether there exists a causal nexus

6

between Crane Co.'s actions under the direction of the Navy and Killam's injuries. Among other arguments, Killam contends the causal nexus is absent because the Navy did not forbid Crane Co. from issuing warnings regarding asbestos. (Doc. # 103-1 at 6-7).

In determining whether the causation element is satisfied in this case, the Court finds the analysis in <u>Isaacson v. Dow Chemical Co.</u>, 517 F.3d 129 (2d Cir. 2008), instructive. There, veterans sought damages for failure to warn against the chemical companies that manufactured Agent Orange for use by the U.S. Military during the Vietnam War. <u>Id.</u> at 133. The chemical companies removed the suit under the federal officer removal statute and the veterans filed a motion to remand, which the district court denied. <u>Id.</u> The Second Circuit affirmed. <u>Id.</u> Discussing causation, the court explained: "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack (here, the production of the byproduct dioxin) occurred *while* Defendants were performing their official duties." <u>Id.</u> at 137-38. Along these lines, Crane Co. persuasively submits that its supply of asbestos-containing products to the Navy that did not feature a warning was an act performed as a part of its official duty to the Navy.

Under similar circumstances, a number of courts have held that the provision of asbestos-containing products at the direction of the Navy supplies a causal connection between a plaintiff's injury and the defendant's actions, particularly with respect to a failure to warn. See Marley v. Elliot Turbomachinery Co., 545 F. Supp. 2d 1266, 1273 (S.D. Fla. 2008)(denying motion to remand in asbestosis case after finding that a causal nexus was present because "defendants manufactured and supplied the asbestos containing products in the course of their contractual relationship with the Navy."); Leite, 749 F.3d at 1124 (denying motion to remand filed by plaintiff with asbestosis because Crane Co.'s supply of asbestos containing products to the Navy that did not feature warnings are acts that Crane Co. did as a part of its official duties); Ruppel, 701 F.3d at 1180 ("[T]here must be a causal connection between the charged conduct and asserted official authority. CBS can satisfy this requirement if its relationship with Ruppel derived solely from its official duties for the Navy. Here, CBS acted under the Navy by installing asbestos. This duty gave rise to Ruppel's complaint. Thus, the gravamen of Ruppel's complaint occurred while CBS acted under color of federal authority."). Based on these authorities and others, the Court determines that

8

Crane Co. has satisfied its burden regarding causation.

### 4. Crane Co. has a Colorable Federal Defense

Finally, the Court finds that Crane Co. has asserted a colorable federal defense: the government contractor defense. "[A]t this stage of the litigation, there is no need to decide whether defendants will prevail on [their] defenses. The only issue is whether one or both of the[] defenses is colorable." In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 342 F. Supp. 2d 147, 158 (S.D.N.Y. 2004); Jefferson Cty., Ala., 527 U.S. at 431 ("In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute . . . [and] do not require the officer virtually to 'win his case before he can have it removed.'")(quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969); Magnin, 91 F.3d at 1427 (the federal defense "need only be plausible; its ultimate validity is not to be determined at the time of removal.")).

Crane Co. asserts the government contractor defense. As stated by the United States Supreme Court, the elements of this defense are "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers on the use of the equipment that were known

9

to the suppliers but not to the United States." Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988).

In failure to warn cases, the elements are slightly different: "(1) the Navy exercised its discretion and approved certain warnings for Crane's products, (2) Crane provided the warnings required by the Navy, and (3) Crane warned the Navy about any asbestos hazards that were known to Crane but not to the Navy." Leite, 749 F.3d at 1123. See also Ruppel, 701 F.3d at 1185 ("It is well established that the government contractor defense articulated by the Supreme Court in Boyle may operate to defeat a state failure-to-warn claim. Boyle's interest in 'insulating' contractors from suits when the 'government exercises its discretion and approves designs' extends to situations where it 'approves warnings intended for users.'")(citing Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003 (7th Cir. 1996)).

Crane Co. has met its burden and has shown a colorable federal defense.  The Navy provided Crane Co. with precise specifications regarding its products, which required the use of asbestos. Crane Co. delivered the products that conformed to the Navy's specifications.  Details about this relationship are provided in Rear Admiral Sargent's affidavit (Doc. # 1 at 165-68) as well as Pantaleoni's affidavit (Id. at 84-85).  In

10

addition, Crane Co. has filed over 1,000 pages of military specifications, including illustrations and diagrams. At this preliminary stage of the litigation, the Court accepts Crane Co.'s assertion that the Navy did not allow contractors, such as Crane Co., to independently formulate labels or warnings for products used on warships.  As stated in Crane Co.'s response to the Motion to Remand:

> The Navy's specifications governed not only the design and construction of Crane Co.'s products, but also the form and content of the labeling, product literature, and warnings supplied with the products.   Sargent  Aff.  at  ¶¶  23-32.   The specifications did not direct Crane Co. to include warnings regarding asbestos, and if Crane Co.'s products deviated from those specifications in any way, the Navy would reject the product. Id.  The Navy reviewed the proposed product literature and labeling that accompanied equipment and, at its discretion, edited the wording of instructional material and warnings, approving certain warning language and disapproving other language.

(Doc. # 143 at 6). See also Cuomo v. Crane Co., 771 F.3d 113, 117 (2d Cir. 2014)("We conclude that Crane's evidence tending to prove that the Navy issued precise specifications regarding its shipboard equipment, that the Navy would not have accepted Crane's equipment had it not conformed to those specifications, and that the Navy understood the health risk associated with asbestos easily clears the low threshold for asserting a federal contractor defense for purposes of removal

11

under § 1442(a)(1).").  Because Crane Co. has a colorable federal defense to Killam's asbestos-related claims, the Court finds that Crane Co. satisfies all requirements for federal officer removal.

Intertwined with his analysis regarding whether Crane Co. presents a colorable federal defense, Killam also argues that remand is required because there is no conflict between state and federal law regarding asbestos warnings.  In <u>Dorse v. Eagle-Picher Industries</u>, 898 F.2d 1487, 1490 (11th Cir. 1990), the court explained that if a defendant cannot show a conflict between its duties under state tort law and governmental directives, it cannot assert a valid government contractor defense.  Killam contends that Crane Co. "has not provided a good faith foundation to argue that it was unable to comply with both its contractual obligations with the Navy and the state duty of care." (Doc. # 103-1 at 5).  The Court is wary of deciding fact-intensive issues at the motion to remand stage, where threshold, jurisdictional issues are presented. The Court is bound by the <u>Dorse</u> case, and fully intends to abide by every contour of that opinion.  However, <u>Dorse</u> addressed a summary judgment issue, and was not decided at the motion to remand level. At this preliminary juncture, the Court is satisfied by Crane Co.'s averments that it could not

12

simultaneously abide by state tort law and Crane Co.'s federal duties.  See Cuomo, 771 F.3d at 117 ("Respecting the policy behind the federal officer removal statute, we emphasize that the district court's role on a remand motion is not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Marc Killam's Motion to Remand (Doc. # 103) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of December, 2016.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE